Good morning. May it please the Court. My name is Anna Benvenue and I represent Petitioner Bidya Pradhan. Today the Court is considering the Board and the Immigration Judge's decision that Mr. Pradhan, whether Mr. Pradhan established that his support for the Nepali Congress Party or the malice perception that he supported the Nepali Congress Party was at least one central reason that he suffered persecution. This Court needs to review the agency's decision here under a substantial evidence standard of review. And in this case, the Court must reverse and remand because a reasonable adjudicator would be compelled to conclude that at least one central reason that Mr. Pradhan was persecuted was on account of either his imputed political opinion or his political opinion. Mr. Pradhan need not show that the only reason he was targeted was on account of his political opinion or even that it was the most important reason that he was targeted. He just has to show that it was one of the main reasons that he was targeted. This is a post-real ID case, right? That's correct. So what's the difference between the law under the post-real ID and before the real ID? So before the real ID Act, it was certainly easier. He just had to show that it was at least in part one of the reasons that he was persecuted. Now he has to show that it's a central reason, a main reason, an important reason, but not the most important or the only. There can be still mixed motive case law in the post-real ID Act. In this case, the record is How do we know it's a central reason? Yeah. It's, I mean, it's a fact-intensive kind of conclusion. Who makes that decision? In this case. That's the I.J., right? Right. The I.J. does it, and you're reviewing it first, whether there's substantial evidence supports that. So I'll ask you again. How do we know it's a central reason? Well, you're looking at direct and circumstantial evidence during the incidents of persecution. And in this case, you have credible testimony of the Petitioner about things that were said to him during the threats and during the persecution that he received. And those established that the mindset of the people persecuting him was based on two reasons. One, based on his imputed political opinion or his belief that their belief that he was anti-communist, it didn't support their political ideology, and also on the basis that he was a businessman and had money to do it. So we know that there's no question that they targeted him because he had money. Does the record show anything about what kind of other people were being targeted? Yes. So the record includes there's a great deal of country conditions evidence in the record about what was happening at the time in Nepal. And it shows that people similarly situated to Mr. Pradhan, who are business owners and who didn't support the malice, were being targeted at a rapid rate. And there was a lot of violence going on around the period. But what is the evidence that shows that other people were being targeted because of their political views? Well, there's evidence that shows that people that didn't support the malice were actively being targeted in the country conditions record, and Mr. Pradhan is a good example of that. Before he was a successful businessman, he was targeted just in his role at a regular at Pepsi. He was targeted. And when he refused to support them, they told him it seemed like he was anti-communist and that maybe that's why he wasn't supporting them. Then later, there were multiple occasions where they told him that the reason he was being targeted is because he was not supporting their ideology. In 2005, they told him they were targeting him because he supported the Nepali Congress and because he was a businessman. So those two reasons are the central reasons. There are two in this case. There could be three. There could be four in a given case. It doesn't have to just be one. But in this case, there were two. And Mr. Pradhan doesn't need to show that his support or lack thereof for the malice was the reason that he was targeted only. He just has to show that it was a main reason that they targeted him. And in this case, they probably the evidence shows based on his credible testimony that they wouldn't have targeted him if he was a supporter of them. He was consistently supporting the Nepali Congress by showing support for them, helping set up for their events, giving them, you know, supporting their students. And he wasn't providing that same kind of support, either financial or otherwise, to the malice. And that was one of the main reasons that they targeted him. So what is your understanding of how the IJ dealt with that evidence? Yeah, so it seems like the IJ just simply ignored the record evidence that doesn't she focused only on the record evidence that supports the conclusion that she came to in the end, citing two examples of this testimony that he gave regarding the businessman aspect of his targeting rather than focusing on the rest of the record evidence, the anti-communist statement and the fact that in the April 2005 incident they said he was a Nepali Congress supporter. She also seemed pretty focused on whether or not she didn't find that the third statement in August 2005 that he made over the phone was credible, perhaps, or that, but then she found that it was irrelevant. And in some ways it may have been irrelevant because it certainly was the last straw. It was the thing that brought him to this country. And so it doesn't tend to show necessarily why they had been persecuting him over the previous five years, although it is some evidence of that as well. But the immigration judge completely overlooked a bunch of record evidence that indicates the second main reason for his persecution. And she also, in her conclusions under the Convention Against Torture, she concluded erroneously that he had not suffered torture in the past, even though she had found that he suffered past persecution, and said that even though he wouldn't be tortured too badly, he didn't deserve protection under the Convention Against Torture. And that decision also should be reversed by the State. What did they do? Did they push him up against a wall and try to extort money from him? Yeah. Is that torture under our case law?  No, but my question was, is that under our cases, does being shoved up against a wall and being extorted, does that constitute the severe kind of conduct that is defined by torture? Well, there's a couple of things I think that are important. One is that the country conditions about what malice we're doing to people in the area show that the kinds of behavior. I'm asking about what happened to him. Right. Was he tortured by being pushed up against a wall? Yeah. I mean, he had two beatings. They held him, they pushed him, they punched him in his face and in the stomach. And we have cases that say torture is an extreme concept and basically being beat up is not torture, our cases say. Certainly. But he was also being punished, and it was intentionally inflicted against him. And it was two occasions. And that, taken with what was happening all over the country to have malice, are indicative that he is more likely than not to face future torture if he returns. I'm going to reserve the rest of my time. Thank you. Thank you. We have the government. Good morning. May it please the Court. My name is Elizabeth Chapman. I'm representing the Attorney General. Now, to obtain reversal in this case, Mr. Prada needs to demonstrate that the record not only supports but compels the conclusion that a central reason that the malice targeted him for money was because he was a behind-the-scenes supporter in the Nepalese Congress Party and not simply because he was a wealthy businessman. Now, the record does not compel this conclusion. Rather, the record substantially supports the immigration judge's finding that a primary central reason that he was targeted was because he was a wealthy businessman. And in Mr. Prada's own words, the malice target wealthy businessmen for money. Now, a key fact in this case is that despite his claims that he was politically active for many years, the malice did not start to ask him for money until he became a wealthy businessman. So he claims that he supported the malice in college. Not the malice, the Nepalese Congress Party. Why would they want to shake him down for money before he was wealthy? Well, but the key fact, they didn't ask him for anything. They didn't ask him to support them. They didn't ask him to donate chairs and tables and fruits the way that he supported the Nepalese Congress Party. They only asked him for money. They didn't ask him for anything else, any other type of support, or to stop supporting the Nepalese Congress Party. They only asked him for money, and they only started to do that once he became a wealthy businessman. You would agree, though, assuming for the sake of argument that his wealth was a central reason for the targeting. Does that end our inquiry, or do we look at whether there was another central reason? In other words, let's take the, they're targeting wealthy people, but they don't target wealthy people who are supporters of theirs. If there are two reasons, then he still gets relief, right? Sure, except the record here doesn't support, firstly, the record doesn't support that they target people who support the malice but don't give money. So under this Court's jurisdiction. How does it support the other? There's just, the record doesn't bear on that. Well, under Parsimova v. Mukasey, under this Court's, what this Court has said is that a motive is a central reason if the persecutor would not have harmed the applicant if such motive did not exist. Right. So here's what the record says, and we have to presume it's true because there was no adverse credibility finding. That the, why, he asked them why the malice shows in a man, money for a man privately. He told me that since you are a businessman and that you are a Nepali Congress supporter, you are on our list. Right. Why isn't that enough? Well, first of all, he says that at the April 12th. That's when he says that. Right. During the April 12th, the malice began asking him for money in February 2000. So months before that, we don't have any evidence that the malice were even aware of his political opinion when they started asking. Well, we don't know one way or the other. I'm sorry? We don't know one way or the other. I mean, people generally don't say, I'm here persecuting you, and here's our card. I'm persecuting you for a reason that's contained within the INA. Right, but we don't even know that they were aware of his political opinion. Either way. So the record wouldn't compel the conclusion that they were aware. But it doesn't matter. And that's the standard. Once they say, we are after you because you're a businessman and you're a Nepali Congress supporter, why isn't that a central reason for that act? Well, at the same time, he also did say that when he told the asylum officer, and he admitted this in his testimony before the immigration judge, that the asylum officer asked, did you ever tell the malice you do not support them? And he said no because he wanted them to believe that he did support them and they may have believed it. So the record does also demonstrate that the malice may have believed that he did support them but simply did not pay him money because he didn't want to or did not have the money. But he finally says he telephoned on a telephone call. He says, I'm against you. And the next day they come and tie him up, right? No, that was the August 3rd. But up until then, we don't know. Why does that matter when you say up until then? I mean, it could be one incident that would support a grant of asylum. It doesn't have to be that every single time their motive was motivated by politics. Right. You can exclude the rest, and even if it's just one time or two times, doesn't that support the conclusion? But it doesn't compel the conclusion that it was a central reason. They may have known about his politics, but it would need to be a central reason. See, that's the question I asked Ms. Ben-Nu. I don't know how we are supposed to determine where it's just a regular reason versus a central reason. It's almost a metaphysical distinction. Right. Now, and one way is to look at the record evidence. And as you asked earlier, there are nine articles that Mr. Pradhan himself submitted of the malice-targeting wealthy individuals in Nepal without any regard to their political opinion. For example, on page 321 of the record is an article he submitted about malice-targeting business people, both Nepalese and foreign, and asking them for money, demanding money, and threatening them if they don't pay. Would you agree that his politics was a reason? I'm sorry? Do you agree that his politics was a reason? I don't necessarily agree that it was a reason because six years went past. Not even a minor reason? You know, it's possible that it could have been, but the record does not compel that it was a central reason. What's troubling me, if the IJ had said what you're saying, this might be a little clearer to me, but how did the IJ deal with this evidence that was not deemed incredible, that they told him they were after him because he was not a supporter of the other side? What is it that the IJ found that helps you here? What the immigration judge found is that the central reason that they targeted him for money was because he had money. And because six years went past where he supported the Nepalese Congress Party, and they did not even once approach him, so they did not ask him for money, they didn't ask him for any type of support. They didn't ask him to donate shares. Did the IJ do anything with the other evidence in the record indicating that they were motivated by his political opinion? I don't believe the immigration judge found that. It didn't say anything about it? I'm a little confused. There was no finding. There was no finding to the effect that his political opinion was not a motivating factor. Or that it was not central. Right. What the immigration judge found is that the record did not demonstrate that they were even aware of his political opinion. But that's belied by the record. Because he says they told him, and then he later says I told them as well. In other words, he explains to them, or in a phone call they explain to him, we're targeting you because you're a businessman and because of your politics. And later he phones and says I'm against you and they come and tie him up. And if the IJ had not believed him, made an adverse credibility finding, that would be one thing. But we presume then that his testimony is true. The immigration judge did not believe him with regards to the August 3rd phone call. And I believe he's quite clear about stating that the court does not find, the immigration judge did not find that that was credible. But the immigration judge found that despite, even if it were credible, it wasn't a central reason behind the persecution. You know, the difference it seems to me is with post Real ID, and you may disagree with me, but I thought the Real ID Act was really aimed at some of the decisions such as Borja and Briones when there was no expression at all of any political motive, but it was presumed from the circumstances. It seems to me it still preserves a mixed motive case when you can prove that there was at least a mixed motive. Would you agree with that? I mean, but it does have to show that it was central. A mixed motive is not enough. If it's just a reason, that's not sufficient. It has to be a central reason. And the record here just does not support that it was a central reason. Even if it was a reason, it does not support or compel that it was a primary principle and central reason. And that's because if he did not have money, they would not have harmed him. Right. But let's say that the only evidence in this case was the one statement. They told me we are targeting you because you are a businessman and you are because of your politics. That's the only evidence in this case, and let's say they tortured him. This is hypothetical. Wouldn't that be enough? Under your theory, I mean, they're saying it's a conjunctive. We're doing this for two reasons. How can you say that one is more important than the other based on that evidence? I think that this Court's precedent in Parsimova explains the other thing that he would need to demonstrate under Parsimova. It says motive is a central reason if that motive, standing alone, would have led the persecutor to harm the applicant. So Mr. Prada would need to demonstrate that if he were not a wealthy businessman, based on his political opinion alone, they would have harmed him. But the record is clear that from 19 — from 2001 to 2005, he maintained his political involvement, but the Maoists did not once approach him. They didn't ask him for any type of support. They did not ask him to donate chairs and tents and fruits to events, which is what he was doing. They didn't ask him for money. So he cannot show that based on his political opinion alone, they would have targeted him. And that's what this Court states in Parsimova that he would need to demonstrate. Thank you. Any further questions from the panel? Thank you for your argument. Yes. Respondents are essentially advocating an untenable burden here for asylum applicants to meet. The Post-Real ID Act case law doesn't obliterate a mixed motive theory. And in fact, it would be next to impossible to do what Respondent is suggesting Mr. Prada would have had to do in order to qualify for asylum. Do you agree with her but-for analysis? No. Why? Well, because under Parsimova, that's not what's required. As the Court pointed out in that case, the slur, the ethnic slur in that case was it happened during the attack, but there was no evidence at all that that was why the attackers attacked the victim in Parsimova. In this case, we have direct evidence that he was attacked because he was a supporter of the Nepali Congress Party. And that's all we can expect an asylum applicant to do. It's enough that there were two reasons. He doesn't have to show one is more important. And we know that that motivated at least one of his attacks. But also Respondent is mischaracterizing the record. He was a public person. He was well-known in the community. And he publicly supported the Nepali Congress Party in being present at events. And that support had run for a long time through college. In 1999, he was targeted. And when he refused to assist some malice workers in getting back pay that he didn't believe they were entitled to, they said that was because they believed he was anti-communist. So there's old evidence that indicated that they knew who he was, that he wasn't a supporter of the malice. And the fact that he had the financial means to pay them and that that may have motivated why they targeted him or did motivate why they targeted him doesn't mean that he has to meet some impossible burden of showing that every single time he was targeted, they knew exactly who he was and why they were targeting him. It would make it impossible for an asylum applicant to meet a burden. And this record cannot support the conclusion that he wasn't being targeted, at least for one central reason, because of his Nepali business or his Nepali Congress support. So here's a person who always says, and the government has quoted the language, a motive is a central reason if the persecutor would not have harmed the applicant if such a motive did not exist. So what in the record do you think shows that? Well, in this case, the incident in April 2005 when they directly told him, we've come to you because you are a Nepali Congress supporter, supports the conclusion that but for that fact of who he was, they wouldn't have targeted him. I don't think a but for analysis is the proper reading of this case, this Court's Real ID Act nexus jurisprudence. There isn't that much out there, but in this Court's recent case in Ren v. Holder, the Court noted that the Real ID Act's principal purpose was to deal with changing the kinds of inconsistencies that could be used to find somebody not credible, and it doesn't obliterate all of this Court's jurisprudence about how to evaluate the real ID Act nexus on account of this case. And mixed motive and all of the case law that leads up to that has to take into account that an asylum applicant must be able to meet its burden, and this record compels the conclusion that he met that burden. All right. Any further questions? No, thank you. Thank you for your argument. Thank you. The case just heard will be submitted for decision.
judges: Schroeder, Thomas, Silverman